**In re Paul ROBINSON, Debtor.**

**Paul ROBINSON, Appellant,**

v.

**Mary Elaine TENANTRY, Appellee.**

No. 92–1199.

United States Court of Appeals,
Tenth Circuit.

Feb. 23, 1993.

Stephen E. Berken, Berken and Associates, P.C., Denver, CO, for appellant.

Brian Holland, Holland, Seelen & Pagliuca, Denver, CO, for appellee.

Before LOGAN and MOORE, Circuit Judges, and LUNGSTRUM,* District Judge.

PER CURIAM.

Appellant Paul Robinson (debtor) appeals the district court's reversal of the bankruptcy court's finding that his Chapter 13 plan was proposed in good faith, which is a prerequisite to confirmation of a Chapter 13 plan. 11 U.S.C. § 1325(a)(3). On appeal,[1] debtor argues that the district court (1) erred in considering whether debtor's debt arose from a willful and malicious injury because that issue was not raised in the bankruptcy court; (2) impermissibly made independent findings of fact, not supported by the record, in deciding the debt arose from a willful and malicious injury; and (3) erred in concluding that the bankruptcy court's finding of good faith was clearly erroneous, even assuming the debt arose from a willful and malicious injury. We exercise jurisdiction under 28 U.S.C. § 158(d) and reverse. We conclude the bankruptcy court was not clearly erroneous in finding debtor's plan was proposed in good faith.

---

* Honorable John W. Lungstrum, District Judge, United States District Court for the District of Kansas, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. Debtor agreed to request relief from the automatic stay so that Tenantry's civil suit could proceed against him in state court. Appellant's

## I. Background

In February, 1990, Mary Tenantry, appellee, filed a civil suit against debtor, asserting claims of breach of fiduciary duty and outrageous conduct. Tenantry named Bishop William Frey and the Bishop and Diocese of Colorado as debtor's codefendants. Tenantry alleged that debtor took advantage of his position as pastoral counselor and engaged Tenantry in a sexual relationship. On August 15, 1991, four days before the trial was scheduled to begin, debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. The petition gave rise to an automatic stay which prevented the trial from proceeding against debtor. 11 U.S.C. § 362(a)(1).

The state court allowed the trial to proceed against all other defendants, however. A jury found in favor of Tenantry and awarded her 1.2 million dollars. Of this amount, $448,000 was based on the jury's findings that debtor breached a fiduciary duty to Tenantry, and that debtor's codefendants were vicariously liable for the economic and noneconomic damages caused by the breach. Based on the jury verdict, Tenantry filed an amended "proof of claim" in bankruptcy court which estimated debtor's liability on the breach of fiduciary duty claim at $241,200—the amount the jury awarded in economic damages from debtor's breach. The form also stated that Tenantry would amend her proof of claim when she obtained judgment on her other claims against debtor.[2]

Debtor, in his proposed Chapter 13 plan, sought to discharge any contingent liability which might arise as a result of Tenantry's suit against him.[3] Tenantry filed a written

---

App. at 27. The bankruptcy court granted the requested relief, ordering that Tenantry's civil action "may proceed to full and complete adjudication ... to determine the liability of [debtor] and the liquidated amount of the claim by [Tenantry]." Id. at 29.

3. Tenantry argued below that debtor's discharge under Chapter 13, 11 U.S.C. § 1328(a), would prevent Tenantry from recovering any damages that may be awarded as a result of her suit against debtor. However, the bankruptcy judge ordered that upon final judgment in Tenantry's suit against debtor, Tenantry's liquidated claims

objection to confirmation of the plan, arguing, among other things, that the plan was not proposed in good faith. She argued that her claim against debtor could not be discharged had debtor filed bankruptcy under Chapter 7 instead of Chapter 13, "pursuant to 11 U.S.C. § 523(4) and (6)."[4] Objection to Confirmation of Plan and Request for Denial, Appellant's App. at 41. A debt is nondischargeable in Chapter 7 under § 523(a)(4) if it arose from debtor's fraud or defalcation while acting in a fiduciary capacity. Under § 523(a)(6) a debt arising from debtor's willful and malicious injury cannot be discharged in Chapter 7. Tenantry, in her written motion, offered no argument explaining how her claim against debtor would result in a nondischargeable debt under § 523(a)(4), (6).

At the confirmation hearing in bankruptcy court, Tenantry's counsel argued only that the debt arose through a breach of fiduciary duty; she did not specifically argue that the debt arose from a willful and malicious injury. Debtor's counsel, however, raised the willful and malicious injury issue in his opening and closing statements. Appellant's App. at 57–58, 153. He argued that the debt did not arise from an injury which would qualify as "willful and malicious" as that phrase has been defined by *Farmers Insurance Group v. Compos (In re Compos)*, 768 F.2d 1155, 1158 (10th Cir. 1985). The bankruptcy judge, ruling from the bench, did not discuss whether the debt arose from a willful and malicious injury. The judge considered the eleven factors set forth in *Flygare v. Boulden*, 709 F.2d 1344, 1347–48 (10th Cir.1983), and concluded that the plan was filed in good faith. Appellant's App. at 156–60.

Tenantry appealed to the district court, arguing, among other things,[5] that the bankruptcy court erred as a matter of law in refusing to consider whether Tenantry's claim arose from debtor's willful and malicious injury to Tenantry, under § 523(a)(6). The district court reversed the bankruptcy court's finding of good faith. The district court found that (1) Tenantry's claim would be nondischargeable under Chapter 7, because it arose from willful and malicious conduct; and (2) the timing of the bankruptcy petition was a special circumstance not adequately considered by the bankruptcy court. The district court found, further, that the timing of the petition on the eve of trial was a "bad faith effort to use Chapter 13 bankruptcy protection to avoid a court's potential judgment." Appellant's App. at 248. For all of these reasons the district court concluded the bankruptcy court was clearly erroneous in finding the plan was filed in good faith.

II. Analysis

■ Our review of the confirmation of debtor's Chapter 13 plan is governed by the same standards that governed the district court's review. *Eastland Mortgage Co. v. Hart (In re Hart)*, 923 F.2d 1410, 1414 (10th Cir.1991) ("[T]his court has the same scope of review over bankruptcy court decisions as does the district court."). The bankruptcy court's legal determinations are reviewed de novo. *First Bank v. Mullet (In re Mullet)*, 817 F.2d 677, 679 (10th Cir.1987). "[T]he district court as well as the court of appeals must accept the factual findings of the bankruptcy court unless they are clearly erroneous." *Branding Iron Motel, Inc. v. Sandlian Equity, Inc. (In re Branding Iron Motel, Inc.)*, 798 F.2d 396, 399 (10th Cir.1986). "'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105

---

which she cannot recover from debtor's insurer would become unsecured claims in the bankruptcy. Appellant's App. at 29. Debtor's plan proposes a partial repayment to the class of unsecured creditors in the amount of $1,110, to be paid over forty-seven months. Appellee's App. at 22–24. Therefore, under the plan, Tenantry will share the proposed $1,100 payment along with all the other unsecured creditors.

**4.** We assume that Tenantry meant to cite § 523(a)(4), (6).

**5.** The district court affirmed the bankruptcy court's finding that the debt owed to Tenantry was contingent and unliquidated. Tenantry did not appeal this issue.

S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

■ Whether a Chapter 13 plan has been proposed in good faith is a question of fact subject to the clearly erroneous standard of review. *Noreen v. Slattengren*, 974 F.2d 75, 77 (8th Cir.1992); *In re Love*, 957 F.2d 1350, 1354 (7th Cir.1992); *Society Nat'l Bank v. Barrett (In re Barrett)*, 964 F.2d 588, 591 (6th Cir.1992); *Jim Walter Homes, Inc. v. Saylors (In re Saylors)*, 869 F.2d 1434, 1438 (11th Cir.1989); *Downey Sav. & Loan Ass'n v. Metz (In re Metz)*, 820 F.2d 1495, 1497 (9th Cir.1987).

■ A determination of good faith must be made on a case by case basis, looking at the totality of the circumstances. *Pioneer Bank v. Rasmussen (In re Rasmussen)*, 888 F.2d 703, 704 (10th Cir.1989). In evaluating whether a debtor has filed in good faith, courts should be guided by the eleven factors set forth in *Flygare*, 709 F.2d at 1347–48,[6] as well as any other relevant circumstances.[7] *In re Rasmussen*, 888 F.2d at 704. "[T]he weight given each factor will necessarily vary with the facts and circumstances of each case." *Flygare*, 709 F.2d at 1348.

■ Debtor argues that the bankruptcy court's failure to make findings on the issue of whether the debt arose from a willful and malicious injury cannot constitute clear error in this case because Tenantry failed to raise this issue to the bankruptcy court. We agree that Tenantry failed to raise this issue in the bankruptcy court.

Generally, a party who refers to an issue "in passing and fails to press it by supporting it with pertinent authority, or by showing why it is sound despite the lack of supporting authority, forfeits the point." *Nunez–Pena v. INS*, 956 F.2d 223, 225 n. 4 (10th Cir.1992). Here, Tenantry cited to the relevant subsection in her written motion, but she did so without any elaboration.[8] At the hearing, she never mentioned her theory that the debt arose from a willful and malicious injury, but argued at length that the debt was nondischargeable because it arose from a breach of fiduciary duty.

Tenantry maintains on appeal that she attempted to establish the nature of the debt that resulted from debtor's breach of fiduciary duty, but "[t]he bankruptcy court refused to hear such evidence, telling counsel for Appellee, 'I'm not going to try the state court suit here today.'" Appellee's Corrected Br. at 9. Indeed, the transcript reveals that the bankruptcy judge limited Tenantry's efforts to impeach debtor's account of his sexual contact with Tenantry.

---

6. The factors are:

   (1) the amount of proposed payments and the amount of the debtor's surplus;

   (2) the debtor's employment history, ability to earn and likelihood of future increases in income;

   (3) the probable or expected duration of the plan;

   (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

   (5) the extent of preferential treatment between classes of creditors;

   (6) the extent to which secured claims are modified;

   (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;

   (8) the existence of special circumstances such as inordinate medical expenses;

   (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

   (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

   (11) the burden which the plan's administration would place upon the trustee.
*Flygare*, 709 F.2d at 1348 (quoting *In re Estus*, 695 F.2d 311, 317 (8th Cir.1982)).

7. In *In re Rasmussen* we recognized that "relevant factors to the analysis of good faith after the 1984 amendments include 'whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentations to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code.'" 888 F.2d at 704 n. 3 (quoting *Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir.1987)).

8. Because Tenantry presented no argument of this issue in her written motion, her contention that the bankruptcy judge erroneously "refused to consider" the arguments she presented in her written motion on this issue is completely meritless. Appellee's Corrected Br. at 15.

Debtor testified that Tenantry initiated the sexual contact and debtor tried to stop her. Tenantry cross-examined debtor, pointing out that at an earlier deposition debtor recollected the embraces were mutual. Such evidence, arguably, bears on whether debtor acted volitionally and deliberately, as required for a willful and malicious injury under § 523(a)(6). *See C.I.T. Fin. Servs. Inc. v. Posta (In re Posta)*, 866 F.2d 364, 367 (10th Cir.1989).

When the bankruptcy judge allowed Tenantry to make an offer of proof, however, Tenantry did not argue that the evidence related to whether the injury was willful and malicious. Instead, she explained that

[o]bviously the Court's going to have to determine the credibility of this [debtor]. [Debtor's counsel] went into the underlying events at great length, and I think the Court needs to know a little bit of the underlying case facts to square with the *Destefano* case where they specifically talk about the breach of fiduciary duty and the way this is a very special relationship. I think the breach of fiduciary duty is applicable here.

[Debtor] has testified to things very different than he testified in his deposition, and I just think the Court should hear that.

Appellant's App. at 126–27. Because Tenantry failed, in her offer of proof, to explain that the evidence was relevant to whether debtor inflicted a willful and malicious injury, she cannot complain on appeal that the bankruptcy judge refused to hear her evidence on this issue. *See United States v. Rascon*, 922 F.2d 584, 588 (10th Cir.1990) (party cannot complain that court failed to make findings on an issue when party failed to bring the issue to the court's attention at the appropriate time), *cert. denied*, —— U.S. ——, 111 S.Ct. 2037, 114 L.Ed.2d 121 (1991). We hold that Tenantry failed to sufficiently advance her argument to the bankruptcy court. Additionally, she has failed to demonstrate that she was impeded from raising the issue. Because

the issue of whether the debt was nondischargeable under § 523(a)(6) was not properly raised to the bankruptcy court, we hold that the bankruptcy judge's failure to consider the issue does not constitute clear error.

■ Tenantry's failure to raise the issue to the bankruptcy court would not, necessarily, preclude the district court, or this court, from reviewing evidence in the record not mentioned by the bankruptcy court. *In re Hart*, 923 F.2d at 1414 (district court may address "any issue presented by the lower court record, even if not addressed in the bankruptcy court"). A reviewing court may not, however, decide factual issues not addressed by the bankruptcy court. *In re Love*, 957 F.2d at 1361.

■ A willful and malicious injury under § 523(a)(6) "requires proof of an intent to injure." *In re Compos*, 768 F.2d at 1159.[9] Debtor testified that at no time did he deliberately try to hurt Tenantry. Appellant's App. at 141. The bankruptcy court did not make a factual finding about whether debtor intended to injure Tenantry. The district court, as a reviewing court, was not in a position to make factual findings on this issue, especially since the record contains disputed evidence on whether debtor acted deliberately and volitionally, as required for an act to be "willful." *In re Posta*, 866 F.2d at 367. We hold that the district court erred in making the factual determination that the debt arose from a willful and malicious injury when the bankruptcy court made no factual findings on this issue. *See In re Hart*, 923 F.2d at 1416 (district court may draw inferences from undisputed facts, but may not make additional factual findings that have the effect of contradicting the bankruptcy court).

■ We turn our consideration to the other factor upon which the district court based its reversal of the bankruptcy court's good faith finding: the timing of debtor's

9. This court recently explained that a willful and malicious injury "occurs when the debtor, without justification or excuse, and with full knowledge of the specific consequences of his conduct, acts notwithstanding, knowing full well that his conduct will cause particularized injury." *Dorr v. Pasek (In re Pasek)*, 983 F.2d 1524, 1527 (10th Cir.1993).

bankruptcy petition and its possible corresponding implication on debtor's sincerity and motivation in filing Chapter 13. After reviewing the entire record, we cannot say that the bankruptcy court was clearly erroneous in finding that debtor filed his plan in good faith. The parties argued at length about the inferences to be drawn from the timing of debtor's petition. There is no indication that the bankruptcy court failed to consider all of the evidence on this issue. Tenantry argued that debtor's filing—just days before the state trial—indicated debtor filed Chapter 13 for the purpose of delaying the trial and avoiding his liability to Tenantry. Debtor testified, however, that the timing of the petition was motivated by his desire to stay interest and penalties on his tax debt, a debt which he assumed in his recent divorce settlement. Appellant's App. at 94, 103–04, 108–09. Debtor admitted that one of the bankruptcy attorneys he met with prior to filing informed him that the filing would probably result in a stay, *id.* at 130, but that he did not file bankruptcy in order to stay the proceeding in the state court, *id.* at 134.

The bankruptcy judge, after hearing all the evidence on debtor's motivation in filing, concluded:

> It could be a close call depending on how I would imply intent from the facts adduced, but there is a fairly good showing that one of the main purposes of this was the breakup of his marriage. This filing was a breakup of his marriage, his assumption of a tax debt and his rather long period of unemployment, so on the balance I find that the plan has been filed in good faith and not in bad faith.

*Id.* at 158.

As finder of fact, the bankruptcy court had the opportunity to judge debtor's credibility when he testified about his motivation for filing bankruptcy. A reviewing court is not entitled "to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511. After reviewing the entire record, we conclude that the bankruptcy court's view of the evidence is plau-

sible. As such the bankruptcy court's finding that debtor filed in good faith is not clearly erroneous. *See id.* at 574.

The judgment of the United States District Court for the District of Colorado is REVERSED.